## A04A0260. TRUITT v. THE STATE.
(596 SE2d 219)

BLACKBURN, Presiding Judge.

Following a jury trial, Theron S. Truitt appeals his convictions for trafficking in cocaine[1] and sale of controlled substances[2] contending that: (1) the trial court erred in denying his motion for directed verdict regarding both counts; and (2) the jury's verdict was contrary to law and strongly against the weight of the evidence. For the reasons set forth below, we affirm.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is *no conflict* in the evidence and the evidence demands a verdict of acquittal as a matter of law.

*Pippins v. State*.[3]

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

---

[1] OCGA § 16-13-31.

[2] OCGA § 16-13-30 (b).

[3] *Pippins v. State*, 263 Ga. App. 453 (1) (588 SE2d 278) (2003).

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The testimony of a single witness is generally sufficient to establish a fact.

*Arnold v. State.*[5]

Viewed in this light, the evidence shows that based on information obtained during an ongoing investigation, the police obtained a search warrant for a residence shared by Truitt, his mother, and brother. Upon entering the premises, the police were informed by Truitt's mother that he was not home and that his bedroom was "upstairs to the left." A search of Truitt's bedroom revealed a digital scale, razor blades, a box of sandwich bags, a handgun, and a large ball containing numerous pieces of crack cocaine hidden in a laundry hamper. Tests of the cocaine showed that it weighed in excess of 29 grams and was 78 percent pure.

Upon learning of the search, Truitt called a friend, who drove to LaGrange and picked him up. They then drove to meet Truitt's brother and retrieved some clothes that the brother had left in the bushes for Truitt. Truitt and the friend then checked into a local motel. Although on their previous visits to the motel Truitt had signed for the room, on this occasion Truitt had the friend sign for the room and would not allow her to call her mother from the room, forcing her to call from a pay phone. While in the room, the friend overheard Truitt admit that the police had found approximately 30 grams of drugs in a clothes hamper in his room. The next morning, the friend drove Truitt to a local car dealer to pick up his car. Truitt was arrested while trying to pick up his car.

Approximately three months later, Truitt was arrested again. This arrest stemmed from a police informant's purchase of cocaine from an individual named Gaines Potts. Twice on the same day, the informant approached Potts to buy cocaine. Both times the informant picked Potts up at a house, drove him to another location, gave him money for the drugs, and witnessed Potts obtain cocaine from Truitt. The informant used marked money for the second transaction. Potts and Truitt were arrested separately following completion of the second transaction. Both had possession of some of the marked money at the time of their arrest. At the time of his arrest, in a subsequent videotaped statement, and when he pled guilty to the charges against him arising from these transactions, Potts stated that he had received the cocaine from Truitt.

1. Truitt contends that there was insufficient evidence to support his conviction for the sale of controlled substances because the State

---

[5] *Arnold v. State*, 260 Ga. App. 287, 288 (581 SE2d 601) (2003).

failed to show that he provided the cocaine Potts sold to the informant. Specifically, Truitt argues that the informant's in-court identification of him as the supplier of the cocaine was not credible. This argument fails because this Court does not weigh the evidence or judge the credibility of witnesses; both matters are exclusively for the jury. *Baker v. State;*[6] *Young v. State.*[7] Moreover, the record shows that portions of Potts' videotaped statement were played at the trial. However, the videotape is not included in the record on appeal and the trial transcript does not include a transcript of the portions of the tape which the jury saw. "It is well settled that where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court. When this is not done, there is nothing for the appellate court to review." (Punctuation omitted.) *Miller v. State.*[8] See also *Hines v. State;*[9] *Burns v. State.*[10] This enumeration, therefore, presents nothing for review.[11]

2. Truitt contends that the evidence was insufficient to support his conviction for trafficking in cocaine, contending that the State failed to establish his possession of the drugs found in the laundry hamper. Because the standard of review for denial of a motion for directed verdict and for insufficiency of the evidence is the same, we review these contentions together. See *Pippins*, supra.

> [A] person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. To prove constructive possession, the State must establish a link between the defendant and the contraband that goes beyond mere spatial proximity. Such connection can be made where the evidence shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Control may be inferred if the defendant owns or resides in the premises, but not if he is merely an occupant.

---

[6] *Baker v. State*, 259 Ga. App. 433 (1) (577 SE2d 282) (2003).

[7] *Young v. State*, 258 Ga. App. 238, 239 (1) (573 SE2d 487) (2002).

[8] *Miller v. State*, 219 Ga. App. 284 (1) (464 SE2d 860) (1995).

[9] *Hines v. State*, 208 Ga. App. 470 (431 SE2d 137) (1993).

[10] *Burns v. State*, 196 Ga. App. 732 (397 SE2d 19) (1990).

[11] Even in the absence of Potts' testimony, there would be sufficient evidence to support the jury's verdict in the form of the testimony of the informant and Truitt's possession of the marked money at the time of his arrest.

(Punctuation and footnotes omitted.) *Bussey v. State.*[12] "For the equal access rule to rebut the inference of defendant's possession of contraband, affirmative evidence must be presented that a person other than the defendant had equal access to the premises where the contraband was found." *Swanger v. State.*[13]

Possession can be proven by circumstantial as well as direct evidence. All of the competent evidence adduced at trial may be considered to show the defendant's constructive or joint possession. Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law.

(Footnotes omitted.) *Carter v. State.*[14]

There was sufficient evidence to show that Truitt resided in the bedroom where the cocaine was discovered. Truitt's friend testified that she heard him admit that the cocaine was found in his room. When asked where Truitt's bedroom was, his mother directed the police to the room in which the cocaine was found. In addition to the cocaine, the bedroom contained trophies and a checkbook bearing Truitt's name. Paperwork regarding Truitt's car was also found in the bedroom.

The record also contains other evidence which supports the jury's verdict. Truitt knew where the cocaine had been hidden and its approximate weight. After the search warrant was executed, Truitt went into hiding, picking up clothes left for him in the bushes, staying in a motel room registered in his friend's name, and forbidding his friend from using the phone in the motel room.

Truitt argues that the evidence showed that both his mother and his brother resided in the house and had equal access to the cocaine. As shown above, the record contained not only evidence of Truitt's residence in the bedroom but also other evidence linking him to the cocaine. "[W]here there is evidence other than 'equal access' connecting an accused to contraband, it is for the jury to determine guilt or innocence." (Punctuation omitted.) *Wilson v. State.*[15] The trial court did not err in denying Truitt's motion for directed verdict. There was sufficient evidence to sustain Truitt's conviction for trafficking in cocaine.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[12] *Bussey v. State,* 263 Ga. App. 56, 57-58 (1) (a) (587 SE2d 134) (2003).
[13] *Swanger v. State,* 251 Ga. App. 182, 185 (1) (b) (554 SE2d 207) (2001).
[14] *Carter v. State,* 261 Ga. App. 204, 206 (1) (583 SE2d 126) (2003).
[15] *Wilson v. State,* 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002).

DECIDED MARCH 3, 2004.

*Franklin H. Thornton*, for appellant.
*Peter J. Skandalakis, District Attorney, Matthew T. McNally, Assistant District Attorney*, for appellee.